Harris Percy **WYNN**, Petitioner-Appellant,

v.

Samuel L. **SMITH**, Warden, Georgia State Prison, Reidsville, Ga., Respondent-Appellee.

No. 30004.

United States Court of Appeals, Fifth Circuit.

July 12, 1971.

---

Harris P. Wynn, pro se.

J. Stephens Jenkins, Jr., Atlanta, Ga. (court appointed), for petitioner-appellant.

Arthur K. Bolton, Atty. Gen., William R. Childers, Jr., Dorothy T. Beasley, Asst. Attys. Gen., Atlanta, Ga., Harold N. Hill, Jr., Executive Asst. Atty. Gen., Marion O. Gordon, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before WISDOM, Circuit Judge, DAVIS *, Judge, and GOLDBERG, Circuit Judge.

DAVIS, Judge.

Appellant Harris Percy Wynn was convicted, in July 1960 in the Superior Court of Muscogee County, Georgia, on his plea of guilty to robbery-by-force, and was sentenced to life imprisonment.[1] In November 1968 he filed a petition for habeas corpus in the Superior Court of Tattnall County, Georgia, primarily on the grounds that he had been denied his right to the assistance of counsel, either appointed or retained, in the criminal proceedings, and that his guilty plea was the product of physical coercion by law enforcement officers. The state habeas judge denied the petition on January 14, 1969, after a hearing at which appellant appeared pro se. Wynn then filed, also pro se, a notice of appeal to the Supreme Court of Georgia. In March 1969 he wrote to the Clerk of that court asking if the hearing record had been received. The Clerk replied by returning appellant's letter with a notation, dated March 20, 1969, that the record had not been received. On May 6, 1969 Wynn petitioned the United States District Court, pro se, for habeas corpus relief under 28 U.S.C. § 2254 (Supp. IV, 1965–68). However, he later received a form postcard from the Clerk of the Georgia Supreme Court informing him that his appeal had been docketed on May 21, 1969, and was "assigned for argument (orally or by briefs) to the calendar beginning on Jul 14 1969." On June 13, 1969 he wrote to the Clerk of the United States District Court, requesting that his petition for habeas corpus be withdrawn without prejudice so that he might pursue his remedy in the Georgia Supreme Court. While the letter was filed by the District Court Clerk, no action was taken on it.

The form docket card which appellant received from the state court clerk required him to make a number of actions to continue prosecution of his appeal: (1) He was to see Rules 15–23 for requirements as to preparation, service and filing of briefs, and the payment of costs due the state; (2) enumeration of errors and briefs were to be under separate covers; and (3) the name and number of the case were to appear in certain places on certain documents. These things were not done, and the appeal was dismissed for want of prosecution on July 14, 1969. Appellant apparently

---

* Honorable Oscar H. Davis, U. S. Court of Claims, Washington, D. C., sitting by designation.

1. At the same time he also pleaded guilty to theft of an automobile, for which he was given a term of from three to five years. This larceny sentence has been completed, and only the robbery conviction is before us.

filed no brief in the Georgia Supreme Court.

In June 1969 appellee responded to the habeas petition in the court below. In September 1969, after the dismissal of his appeal by the state Supreme Court, appellant filed a new petition in the District Court on which no action was ever taken. The District Court dismissed the original petition in October 1969, on the basis of the state court record (including the state hearing transcript); the order stated that none of the exceptions necessary to overcome the presumption of correctness of state factual determinations under 28 U.S.C. § 2254(d) (Supp. IV, 1965–68) was present.[2] The judge denied a certificate of probable cause for appeal, but this court granted one. Leave was also granted by this court to proceed in forma pauperis and counsel was appointed.

### I

The first issue is opened by the state's contention that we must dismiss the petition because of the appellant's failure to exhaust his state remedies under 28 U.S.C. § 2254(d) (Supp. IV, 1965–68),[3] since his appeal from the lower state court's denial of habeas corpus was still pending when he filed his original federal application. Because the general question of exhaustion is a troublesome one we have canvassed the recent case law on that subject in this circuit (none of which is directly in point) to guide us in the resolution of the particular problem presented on this appeal.

The remedies that must be exhausted under § 2254(b) are those which are still open at the time the petitioner files his federal application. Fay v. Noia, 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837, 867 (1963). Technically, when appellant filed his first federal petition in May 1969 his state remedy of appeal was still available. But that circumstance does not automatically compel dismissal. The exhaustion principle is founded on comity rather than jurisdiction; failure to exhaust does not

---

2. Section 2254(d) provides in pertinent part:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:  *  *  *

3. Section 2254(b) provides:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

deprive a federal court of the power to consider the petitioner's claims on the merits, but is an important (and often determinative) factor bearing on the proper exercise of the federal power. Fay v. Noia, *supra*, 372 U.S. at 426, 83 S.Ct. at 842, 9 L.Ed.2d at 861–862; Wainwright v. Simpson, 360 F.2d 307, 309 (C.A.5 1966); Whippler v. Balkcom, 342 F.2d 388, 390 (C.A.5 1965).[4] In applying the doctrine the court has made an individual assessment, in the specific circumstances, of the need for deference to orderly state procedure, as against the federal interest in providing substantial justice to the applicant. "The exhaustion doctrine should not * * * be applied mechanically without regard to factual setting." Pate v. Holman, 343 F.2d 546, 547 (C.A.5 1965). *See, e. g.,* O'Neal v. Beto, 428 F.2d 1164 (C.A.5 1970); Montos v. Smith, 406 F.2d 1243 (C.A.5 1969); Beto v. Martin, 396 F.2d 432 (C.A.5 1968); Hill v. Beto, 390 F.2d 640 (C.A.5 1968); Cobb v. Balkcom, 339 F.2d 95 (C.A.5 1964); Whitus v. Balkcom, 333 F.2d 496 (C.A.5), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). This close attention to the individual case has, at times, even permitted deferring the assumption of federal jurisdiction, although technical exhaustion may have occurred, where comity demanded that state tribunals be given the first opportunity to review the petitioner's contentions. See Spencer v. Wainright, 403 F.2d 778 (C.A.5 1968); Powers v. Hauck, 399 F.2d 322 (C.A.5 1968); Texas v. Payton, 390 F.2d 261 (C.A.5 1968). See also Irving v. Brea-zeale, 400 F.2d 231 (C.A.5 1968); Brent v. White, 398 F.2d 503, 507 (C.A.5 1968); Peters v. Rutledge, 397 F.2d 731 (C.A.5 1968).

In the present instance probably the most important factor is that, as of the time of our decision, appellant is without available state remedies, since his state appeal has already been dismissed for want of prosecution. This court has in exceptional circumstances measured the available state remedies as of the time of the appeal. In Bell v. Alabama, 367 F.2d 243 (C.A.5 1966), cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1967), the federal habeas petition had been filed while a week still remained of the six months period in which to appeal a state denial of coram nobis relief. The court nevertheless reached the merits. *Accord,* Lizana v. Alabama, 394 F.2d 512 (C.A.5 1968). We recognize that these are unusual cases, see Ames v. Middlebrooks, 369 F.2d 113 (C.A.5 1966), cert. denied, 386 U.S. 967, 87 S.Ct. 1050, 18 L.Ed.2d 119 (1967), but so is this one in the very same respect. Were we to dismiss the petition for failure to exhaust, appellant would be without any forum in which to assert his substantial constitutional claims. See Harris v. Alabama, 429 F.2d 1236 (C.A.5 1970). For the court to make that severe choice, we think there would have to be an adequate finding that Wynn "deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies."[5] Fay v. Noia, 372 U.S. 391,

---

4. That exhaustion is not an indispensable prerequisite to federal jurisdiction is illustrated by the recognition that a state may waive it. Goins v. Allgood, 391 F.2d 692, 693 (C.A. 5, 1968); McGarrah v. Dutton, 381 F.2d 161, 165–166 (C.A. 5, 1967); Warren v. Connor, 365 F.2d 590 (C.A. 5, 1966); Tolg v. Grimes, 355 F.2d 92 (C.A. 5), cert. denied, 384 U.S. 988, 86 S.Ct. 1887, 16 L.Ed.2d 1005 (1966).

5. It should be remembered that appellant filed a new habeas petition in the District Court after the dismissal of his state appeal. Although the court below acted only on the original petition, it would be, in this case, a needless formality to insist on measuring the availability of state remedies solely by the status at the time of the original application, if Wynn had fulfilled the normal exhaustion requirement by the time of his second application (especially since he had asked to withdraw the first petition). Under Fay v. Noia, *supra,* 372 U.S. at 434–435, 83 S.Ct. at 846–847, 9 L.Ed.2d 866–867, he did comply with § 2254 by the time of his later application, since the state remedy of appeal was no longer open to him at that moment. The only exhaustion hurdle, thereafter, would be the possibility of a "deliberate by-pass."

438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963); see also McMann v. Richardson, 397 U.S. 759, 768–769, 90 S.Ct. 1441, 1447–1448, 25 L.Ed.2d 763, 771–772 (1970); Henry v. Mississippi, 379 U.S. 443, 450, 85 S.Ct. 564, 568–569, 13 L.Ed.2d 408, 414 (1965); Graves v. Beto, 424 F.2d 524 (C.A.5) cert. denied, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 269 (1970); Burton v. Alabama, 396 F.2d 755 (C.A.5 1968); Baker v. Lee, 384 F.2d 703 (C.A.5 1967); Burns v. Alabama, 360 F.2d 608 (C.A.5 1966); Smart v. Balkcom, 352 F.2d 502 (C.A.5 1965); Hayes v. Holman, 346 F.2d 991 (C.A.5 1965). No such finding was made below by the District Court (though it mentioned the failure to pursue the appeal) since it dismissed the petition on its merits (as determined in the state habeas proceeding).

■ We do not remand the case for consideration of that question (see Tarlton v. United States, 429 F.2d 1297 (C.A.5 1970); Burton v. Alabama, 396 F.2d 755 (C.A.5 1968); Brown v. Wainright, 394 F.2d 153 (C.A.5 1968) cert. denied, 393 U.S. 1101, 89 S.Ct. 899, 21 L.Ed.2d 793 (1969); Baker v. Lee, 384 F.2d 703 (C.A.5 1967) ) because the facts are sufficiently clear, in our view, to compel the conclusion that there was no deliberate bypass. Appellant was proceeding pro se as an indigent prisoner in the state courts, and his actions negate any conscious attempt to short-circuit his state remedies. He did not file his federal petition until he had been informed by the Clerk of Georgia Supreme Court that his appeal had not been docketed, although some 45 days had elapsed from the filing of his notice of appeal; his federal petition refers directly to this long delay as the reason for the federal application. Moreover, upon learning some time later that his appeal had finally been docketed (after a delay which appears to have violated the time periods prescribed by state law),[6] he promptly so informed the District Court and requested that his petition be withdrawn (without prejudice) to allow him to exhaust his state appeal. That no action was taken on this request should not serve to deprive him now of a federal forum. See note 5, *supra*.

■ Nor does the nature of the dismissal of the appeal support an inference of a deliberate by-pass. The form docket card which appellant received toward the end of May 1969 required a variety of actions which may well have seemed impossible or too difficult for him to perform. He was appealing in forma pauperis, yet the card referred to the payment of costs due the state as a prerequisite to prosecution of the appeal, and nothing was said about waiver of costs for indigents. Enumeration of errors and briefs were supposed to be under separate covers; although appellant had listed the alleged errors, they were included within his Notice for Leave to Proceed on Appeal in Forma Pauperis. It is true that appellant made no effort to try to comply as best he could, but when he received the docket card from the Supreme Court's Clerk he already had his federal petition on file and, though he had asked for dismissal of that petition, he heard nothing on that prayer. In fact, the appellee responded to the first petition on the merits before the Georgia Supreme Court had dismissed the appeal. In all these circumstances, it was not unreasonable for appellant to assume that he could proceed in the federal court instead of trying to do what he could to overcome the apparently great (to him) obstacles to consideration of his state appeal.

The Supreme Court of the United States has made a sharp distinction between "one who has deliberately sought to subvert or evade the orderly adjudication of his federal defenses in the state

6. There appears in the record a certificate, dated May 20, 1969, of the Deputy Clerk of the Superior Court, Tattnall County, which accompanied the record of the state habeas hearing, and stated that "due to the work load in this office, I was unable to transmit the within record to the Supreme Court, within the time prescribed by law."

courts" or "who has deliberately bypassed the orderly procedure of the state courts", Fay v. Noia, *supra*, 372 U.S. at 433, 438, 83 S.Ct. at 846, 849, 9 L. Ed.2d at 865, 869, and another applicant who "because of inadvertence or neglect * * * runs afoul of a state procedural requirement, and thereby forfeits his state remedies * * *" *id.*, 372 U.S. at 433, 83 S.Ct. at 846, 9 L.Ed.2d at 866. We think that, very plainly, appellant falls into the latter class, not the former. It cannot be said that he knowingly, understandingly, or intentionally bypassed his state appeal, so that federal habeas relief should be denied him without inquiry into its merits. At the most, he was careless or too easily discouraged. *Cf.* Labat v. Bennett, 365 F. 2d 698, 709–710 (C.A.5 1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1303, 18 L. Ed.2d 334 (1967). We must hold, therefore, that he has sufficiently exhausted his state remedies, and has not forfeited his right to have his habeas application evaluated by a federal court.

We emphasize that this conclusion on exhaustion is consistent with the numerous decisions in this circuit which have found a failure to exhaust. This is not a case in which state postconviction remedies have been ignored by the petitioner. Horn v. Beto, 423 F.2d 583 (C.A.5 1970); Wheeler v. Beto, 407 F.2d 816 (C.A.5 1969); Fox v. Dutton, 406 F.2d 123 (C.A.5 1968); Morris v. Wainright, 404 F.2d 74 (C.A.5 1968); Stepp v. Beto, 398 F.2d 814 (C.A.5 1968); Mobley v. Dutton, 380 F.2d 14 (C.A.5 1967); Goodwin v. Holman, 361 F.2d 403 (C.A.5 1966); Grant v. Georgia, 358 F.2d 742 (C.A.5 1966). There are no substantive contentions presented to us that the state court has failed to pass upon and reject. Pebworth v. Henderson, 428 F.2d 789 (C.A.5 1970); Wilhelmi v. Beto, 426 F.2d 795 (C.A.5 1970); Harrison v. Wainright, 424 F. 2d 633 (C.A.5 1970); Love v. Alabama, 411 F.2d 558 (C.A.5 1969); Williams v. Wainright, 410 F.2d 144 (C.A.5 1969), cert. denied, 398 U.S. 943, 90 S.Ct. 1846, 26 L.Ed.2d 281 (1970); Crosby v.

Smith, 404 F.2d 876 (C.A.5 1968); Spencer v. Wainright, 403 F.2d 778 (C.A.5 1968); Phelper v. Decker, 401 F.2d 232 (C.A.5 1968); Spencer v. Beto, 398 F.2d 500 (C.A.5 1968), cert. denied, 393 U.S. 1092, 89 S.Ct. 858, 21 L.Ed.2d 783 (1969); Taylor v. Beto, 392 F.2d 566 (C.A.5 1968); Gobie v. Wainright, 380 F.2d 57 (C.A.5), cert. denied, 389 U.S. 963, 88 S.Ct. 348, 19 L.Ed.2d 375 (1967); Hutson v. Zeigler, 362 F.2d 200 (C.A.5 1966); Mathis v. Wainright, 351 F.2d 489 (C.A.5 1965), cert. denied, 384 U.S. 1009, 86 S.Ct. 1960, 16 L.Ed.2d 1021 (1966); Cumbee v. Balkcom, 347 F.2d 375 (C.A.5 1965). It is relevant, too, that, to our knowledge, no case in this court has found a failure to exhaust where the applicant would be left without any state court remedy. See Carroll v. Beto, 379 F.2d 329 (C.A.5 1967); Clarke v. Grimes, 374 F.2d 550 (C.A.5 1967); Key v. Holman, 346 F.2d 153 (C.A.5 1965); Martin v. Spradley, 341 F.2d 89 (C.A.5 1965), and the cases previously cited.

## II

Appellant's principal contention on the merits is that his 1960 conviction was vitiated because he had never been informed of his right to counsel in the state criminal proceedings, and he was not represented there by a lawyer. These arguments were found by the state habeas judge, after a hearing, not to have merit, and the District Court confirmed that result on the basis of the state record. No hearing was held below.

■ We must start with the settled proposition that an indigent's right to appointed counsel under Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963), is fully retroactive. See, e. g., Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971); Desist v. United States, 394 U. S. 244, 250 & n. 15, 89 S.Ct. 1030, 1034 & n. 15, 22 L.Ed.2d 248, 255 & n. 15 (1969); McConnell v. Rhay, 393 U.S. 2, 3, 89 S.Ct. 32, 33, 21 L.Ed.2d 2, 4 (1968); Stovall v. Denno, 388 U.S. 293,

297–298, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1204 (1967); Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601, 614 (1965). That right applies to guilty pleas as well as to trials. Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309, 319 (1948); Molignaro v. Dutton, 373 F.2d 729, 730 (C.A.5 1967).; Knight v. Balkcom, 363 F.2d 221, 222 (C.A.5 1966); Davis v. Holman, 354 F.2d 773, 775 (C.A.5 1966).

With that premise, the first inquiry is whether Wynn was in fact assisted by counsel in the state criminal proceeding. Neither the state habeas judge nor the District Court made an express finding on the point. The evidence adduced at the state hearing, however, clearly establishes that Wynn was without counsel. He testified that he was not represented, and his testimony was corroborated by the deposition of Judge John Land, who had been Solicitor-General of the Chattahoochie Judicial Circuit (which encompasses Harris and Muscogee Counties) at the time of appellant's conviction (this deposition was introduced into evidence by the state). Judge Land stated that "[i]t was not the practice at that time to automatically appoint counsel, regardless of whether the prisoner requested it or not." See Goodwin v. Smith, 439 F.2d 1180, 1183 (C.A.5 1971). The indictments against Wynn have blanks in the spaces calling for the name of defendant's attorney, while Judge Land's name appeared as Solicitor. Cf. Goodwin v. Smith, supra, 439 F.2d at 1182 & n. 3. Since all the evidence brought forward at the hearing points to one conclusion—and it is very doubtful that any further evidence on the point could be elicited on remand—the finding is required that Wynn was not represented by counsel when he entered his guilty plea.

■ The state habeas judge ruled, however, that Wynn was not entitled to appointed counsel because he was not indigent at the time of his conviction. That finding of non-indigence is not fairly supported by the record. 28 U.S. C. § 2254(d) (8) (Supp. IV, 1965–68). The only evidence bearing even indirectly on indigence is Wynn's testimony that he asked the trial judge for a delay "so that I might be able to get me a lawyer to defend myself," and explaining that because he was from out-of-state, "I didn't have time to contact my people and let them know that I was in trouble." These statements can be read as saying that Wynn requested an opportunity to retain counsel (if so, his Sixth Amendment right to retained counsel may have been infringed, see infra), and this might permit the inference that Wynn was financially able to retain counsel. Another possible interpretation is that his "people", if contacted, could have procured counsel for him, but that he was personally without resources to do so. Either hypothesis is too tenuous on the record as it stands; an inference drawn from such extremely ambiguous testimony is an insufficient basis for a finding of nonindigence. Cf. Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). The material facts on the point were not adequately developed at the state habeas hearing, 28 U.S.C. § 2254(a) (Supp. IV 1965–68),[7] and the District Judge should decide it for

---

7. Appellee asserts that the conclusory statements contained in the District Court's order under 28 U.S.C. § 2254(d) (Supp. IV, 1965–1968)—including the finding that all the material facts were adequately developed at the state habeas hearing—are findings reviewable under the "clearly erroneous" rule. We doubt that that standard applies to a § 2254(d) recital made by a District Court solely upon review of a state habeas hearing transcript. See, e. g., Carroll v. Beto, 402 F.2d 61 (C.A. 5, 1968); Pearson v. Beto, 400 F.2d 886 (C.A. 5, 1968). In any event, we think that the District Court's conclusion that the material facts were adequately developed at the state hearing is clearly erroneous (except for the appellant's non-representation by counsel and the facts respecting the allegation that physical coercion was exerted on him). Unlike Howard v. United States, 420 F.2d 478 (C.A. 5, 1970), this is not a case in which the files and records show conclusively, or even adequately, that the prisoner's claims are without merit.

himself after a further hearing. We therefore leave this question of indigence for the court below on remand.

█ If Wynn is found to have been indigent the District Court must then determine whether he knowingly and intelligently waived his right to counsel. See Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Goodwin v. Smith, 439 F.2d 1180, 1182–1183 (C.A.5 1971); Hillyer v. Dutton, 379 F.2d 809 (C.A.5 1967); Davis v. United States, 376 F.2d 535 (C.A.5 1967). This issue, too, was not explored enough at the state hearing, and calls for additional inquiry. There was, for instance, no evidence that appellant was offered counsel but declined, or even that he knew he had a right to an appointed attorney. The state has the burden of introducing evidence on this question of waiver, and it is not to be resolved against Wynn because he did not request a lawyer or "understood in some measure the nature of the charges to which he pled guilty." Goodwin v. Smith, *supra,* at 1183.

On the other hand, if appellant is found to have been financially able to retain counsel, the District Court should determine whether his Sixth Amendment right to do so was waived or infringed. See Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Goodwin v. Smith, 439 F.2d 1180, 1183 & n. 4 (C.A.5 1971). We note Wynn's testimony that he unsuccessfully requested a delay from the trial judge in order to obtain counsel, and that it appears from the record that only 11 days elapsed between his arrest and his conviction and sentence.

█ Finally, there is the problem of the voluntariness of appellant's guilty plea. He testified at the state hearing that his plea was the product of physical coercion by law enforcement officers, and he renews that claim here. However, he offered no corroboration for his claim at the hearing, and there was some general testimony in opposition; the state judge expressly found insufficient evidence of such coercion. We do not disturb that finding since the court was not required to credit appellant's testimony. See Tyler v. Beto, 391 F.2d 993, 995 (C.A.5 1968), cert. denied, 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574 (1969). But appellant also testified that he was told by the officers that, if he did not plead guilty, "they was gonna give me the electric chair",[8] and that if he did plead guilty he would receive only a five-year sentence for robbery (as distinguished from robbery-by-force). The opinion of the state habeas court did not specifically deal with these charges of non-physical duress and deception. On remand they need be gone into further only if appellant presses them and proffers evidence in support of the claims. He said at the state hearing that "I'm not trying to evade the fact of guilty in this particular case" and "I was guilty of this crime", but from the context it may possibly be that he meant only that he was guilty of plain robbery itself; unaided by counsel, may not have understood the components of the separate capital offense of robbery-by-force. At any rate, appellant should be the one to push the laboring oar if he wishes to proceed further with these particular contentions in the District Court.[9]

To summarize, on remand the District Court should determine: (1) whether

---

8. In 1960, robbery-by-force was a capital offense under the Georgia statutes; the punishment was death "unless the jury recommends mercy, in which event punishment shall be imprisonment in the penitentiary for life." Ga.Code Anno. § 26–2502.

9. Bearing on the relevance to a plea of guilty of fear of the death penalty is Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); in that case the accused was represented by competent counsel. 397 U.S. at 756, 757, 758, 90 S.Ct. at 1473, 1474, 95 L.Ed.2d at 760, 761, 762. See, also, North Carolina v. Alford, 400 U.S. 25, 27, 28–29, 31, 91 S.Ct. 160, 162, 163, 164, 27 L.Ed.2d 162, 165, 166, 167–168 (1970) (defendant also represented by counsel).

Wynn was indigent at the time of the 1960 state proceeding; (2) if so, whether he waived his right to appointed counsel; (3) if he was able to retain counsel, whether he waived that right, or whether it was infringed; and (4) if appellant presses the issue, whether his guilty plea was the result of non-physical duress or deception.

Reversed and remanded.