Walter THOMAS, Jr.,
Petitioner-Appellee,

v.

Oscar SAVAGE, Warden, Retrieve
Unit, Texas Dept. of Corrections,
Respondent-Appellant.

No. 74–3987.

United States Court of Appeals,
Fifth Circuit.

May 23, 1975.

Rehearing and Rehearing En Banc
Denied Sept. 25, 1975.

John L. Hill, Atty. Gen., Ben M. Harrison, Asst. Atty. Gen., Max P. Flusche, Jr., Atty., Austin, Tex., for respondent-appellant.

Donald A. Smyth, Staff Counsel for Inmates, Brazoria, Tex., for petitioner-appellee.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

GIBSON, Circuit Judge.

The State of Texas appeals the issuance of a writ of habeas corpus upon the application of petitioner, Walter Thomas, Jr., pursuant to 28 U.S.C. § 2254 (1970). Petitioner was convicted in a jury trial of robbery by assault in 1968.[1] Under Texas' bifurcated system of criminal trials, the same jury then proceeded with the punishment stage of the trial and sentenced Thomas to a term of 99 years. One of his codefendants received the same sentence, a second received 85 years. During this punishment stage five prior convictions of petitioner were introduced by the State. Four were felony convictions;[2] the fifth, at issue here, was a 1964 misdemeanor conviction for aggravated assault.

Petitioner alleged in his application that the misdemeanor conviction was constitutionally invalid because he "did not have, could not afford, did not waive, and was not afforded the assistance of counsel." He argues that since the misdemeanor conviction was used to enhance his punishment for the present offense, his conviction is invalid under Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).[3] Thus, actually a prior uncounselled misdemeanor conviction may often prove to be a boon to one escalating the ladder of crime to the point where he has been convicted of a major aggravated offense.

The District Court, after a review of the state court record and without an evidentiary hearing, adopted the findings and conclusions of the Magistrate and held that the use of the void misdemeanor conviction at the punishment stage of

the 1968 robbery trial denied due process. The court granted the requested writ of habeas corpus unless the State retried petitioner within 120 days of its order. We granted a stay pending appeal and expedited the appeal. We have concluded that the writ should not have been granted and therefore reverse.

The State presents the question on appeal as being whether the introduction of the 1964 misdemeanor conviction at petitioner's 1968 felony offense robbery trial was a denial of due process of law. This question requires reference to other issues, i. e., petitioner's indigency and lack of counsel at the 1964 misdemeanor trial, and whether, if indigent and denied counsel, the introduction of that conviction can be determined to be harmless error.

▄▄ At the time of his misdemeanor conviction in 1964 there is no doubt but that Thomas was entitled to appointed counsel if he was unable to afford counsel. Olvera v. Beto, 429 F.2d 131 (5th Cir. 1970); Matthews v. Florida, 422 F.2d 1046 (5th Cir. 1970). The necessity for counsel is judged by the maximum penalty the defendant *may* receive. Olvera v. Beto, *supra.* In this respect the cases of this circuit go beyond the Supreme Court's decision in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), which would only require the appointment of counsel when a sentence of imprisonment is imposed. This right to counsel applies retroactively. Berry v. City of Cincinnati, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187 (1973); Olvera v. Beto, *supra.* Here, since Thomas was faced with a possible maximum of two years imprisonment and/or a $1,000 fine, he was entitled to appointed counsel if indigent. Thomas, at the time of the

---

* Of the Eighth Circuit, sitting by designation.

1. The facts underlying that conviction were aggravated. Since they are set forth in Thornton v. State, 451 S.W.2d 898 (Tex.Cr.1970), the facts will not be summarized here.

2. Breaking and entering a coin-operated machine and three burglary convictions.

3. "To permit a conviction obtained in violation of Gideon v. Wainwright [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799] to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526) is to erode the principle of that case."

Burgett v. Texas, 389 U.S. at 115, 88 S.Ct. at 262.

misdemeanor conviction, was not a stranger to the courts. He previously had four felony convictions where he was represented by counsel.

It is clear that Thomas did not have counsel at the time of his 1964 misdemeanor conviction.[4] However, the record is unclear as to his indigency at the time of conviction and petitioner has the burden of proving his inability to hire counsel. Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). Here, the findings and conclusions of the Magistrate, adopted by the District Court, were to the effect that the material facts are too inadequately developed to conclude that the petitioner was not indigent. Conversely, they are too inadequately developed to support a finding of indigency.

The record shows that Thomas made a $300 bond before trial. He plead guilty and received a sentence of a $100 fine and costs. He failed to pay the fine and was later remanded to jail. He was confined 7 days, the balance of the fine and costs of $111.95 was then paid, and he was released. In opposition to the above, petitioner in a pleading in the district court asserted that the $15 payment made to secure his bond was made by his mother, grandmother and aunt, and that the $111.95 was raised by these same persons and his grandfather. He further alleged that at the time of his conviction he earned only $35 per week and was the sole support of his mother and three sisters. However, the only way to establish whether or not the petitioner was indigent would be a remand for an evidentiary hearing as to indigency. Instead, we accept arguendo petitioner's indigency at the time of the 1964 conviction as we are convinced beyond a reasonable doubt that even if the conviction was void, the error in admitting this conviction at the 1968 trial was harmless.

We first address petitioner's contention that the right to counsel is one of the rights referred to in Chapman v. California, 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as so basic that an infraction can never be harmless error. Chapman established the federal standard for determining whether a constitutional error can be found harmless, that being that "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. See also Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). The Court in Chapman did state that "prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." 386 U.S. at 23, 87 S.Ct. at 827. Accord, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The right to counsel as established by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), was specifically enumerated. However, our fact situation cannot be directly compared to Gideon. We are not dealing with the basic unfairness of imprisoning someone due to a conviction obtained without benefit of counsel as was the situation in Gideon and Argersinger. Here we deal with a situation where the prior counselless conviction has been introduced in a subsequent trial, as in Burgett v. Texas, supra, a situation fraught with possibilities of prejudice but one where the taint may not be so great as to require a conclusion that such introduction can never be harmless.

Several circuits have considered whether a violation of Burgett can be considered harmless error and have concluded that it can. Bates v. Nelson, 485 F.2d 90 (9th Cir. 1973), cert. denied sub nom., Bates v. McCarthy, 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974); Subilosky v. Moore, 443 F.2d 334 (1st Cir.), cert. denied, 404 U.S. 958, 92 S.Ct. 328,

---

4. Under the law as existing in 1964 the Texas court was not required to appoint counsel in a misdemeanor case. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), marked the first express recognition by the Supreme Court of a right to counsel where imprisonment is imposed upon the basis of a misdemeanor conviction. In the Fifth Circuit, which earlier recognized a right to counsel in misdemeanor cases, this right did not receive expression until 1965 in Harvey v. Mississippi, 340 F.2d 263, 271 (5th Cir. 1965).

30 L.Ed.2d 276 (1971); Gilday v. Scafati, 428 F.2d 1027 (1st Cir.), cert. denied, 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 186 (1970); *see* Beto v. Stacks, 408 F.2d 313, 318 (5th Cir. 1969). Additionally, the Supreme Court let stand the Ninth Circuit's harmless error determination resulting from the introduction of an invalid conviction in a case given plenary review while agreeing that reliance on the invalid conviction required resentencing, a result inexplicable if such error can never be harmless. *See* United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), aff'g 431 F.2d 1292 (9th Cir. 1970). *See also* Loper v. Beto, 405 U.S. 473, 483 n. 12, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

We readily acknowledge that the facts of the present case do not fit into the *Burgett* mold in which the invalid convictions are used for impeachment, a situation in which the remainder of the evidence may be overwhelming on the issue of guilt. The error here did not infect the guilt stage of the trial at all since it was not introduced before the jury until after the jury had determined Thomas' guilt. Since the prejudice, if any, would have affected the punishment received, the facts herein more closely resemble United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), where consideration was given to prior invalid convictions at the time of sentencing. As the sentence in *Tucker* was "founded at least in part upon misinformation of a constitutional magnitude," the Supreme Court required a remand for possible resentencing. This circuit has required the same procedure. Lipscomb v. Clark, 468 F.2d 1321 (5th Cir. 1972); Davis v. Wainwright, 462 F.2d 1354 (5th Cir. 1972) (rule of *Tucker*

must be applied with equal force to state prisoners).

While the harmless error rule of *Chapman* has been applied in this circuit to errors affecting a sentence, Webster v. Estelle, 505 F.2d 926 (5th Cir. 1974);[5] Cline v. United States, 453 F.2d 873 (5th Cir. 1973), those cases involved the operation of state enhancement statutes where other valid convictions would have mandated the sentences imposed in those cases.

■ Admittedly, the sentence imposed upon Thomas was discretionary with the jury. Can it ever be considered harmless to have the knowledge of a prior invalid conviction before a jury on the issue of punishment? We think that the harmless error rule of *Chapman* may appropriately be applied in such a situation, the burden of course being upon the State to prove beyond a reasonable doubt that the error was harmless, that is, that it had no effect upon the sentence received by petitioner.

■ Thomas argues that there is a reasonable probability that the invalid conviction might have contributed to his punishment since the record demonstrates that the jury considered the conviction, it being the only one which involved violence against a person, and the State mentioned that fact in its argument.[6] He further asserts that since the State introduced this conviction for the purpose of having the jury consider it on the issue of punishment and the prosecutor stressed it for the purpose of increasing his sentence, the State should not now be heard to argue that it did not have its intended effect. *Cf.* Bram v. United States, 168 U.S. 532, 541, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

---

**5.** As noted in Webster v. Estelle, 505 F.2d at 931, "[w]here enhancement could have been based on other convictions, reliance on an invalid one is harmless."

**6.** The Assistant District Attorney in his argument to the jury in the penalty segment of the trial said:

[E]ach of these defendants has at least one prior felony conviction.

Walter Thomas, Jr. first went to the Texas Department of Corrections back in 1961 on

two felony convictions, breaking and entering a coin-operated machine and burglary.

\* \* \* \* \* \*

You will also see from the examining these packets that less than four years later he's convicted on two more burglary cases and returned to the Texas Department of Correction. There is also physical violence involved in Walter Thomas' record and we see that he has been convicted for the crime of aggravated assault.

Appendix at 86–87.

The State notes the four prior valid felony convictions against Thomas, the serious and aggravated nature of the offense he was sentenced for, and the fact that his two co-defendants received 85 to 99 years for the same offense. From this it argues that the jury would have imposed the same penalty even though the misdemeanor conviction had not been before the jury.

We have carefully reviewed the record of the punishment stage of the trial and have concluded that the introduction of the misdemeanor conviction was harmless beyond a reasonable doubt. The State's argument stressed the facts of the particular offense committed by Thomas and his co-defendants and the fact that prior short prison sentences had left him unable to conform his conduct to the dictates of the law. While the record of his misdeameanor conviction was introduced and mentioned to the jury, we are convinced that its introduction had no effect upon the prison sentence imposed upon Thomas.

Accordingly, the judgment of the District Court is reversed and the cause remanded with directions to discharge the writ.