**Louis Mack Parker FORD,**
**Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Director,**
**Division of Corrections, State of**
**Florida, Respondent-Appellee.**

No. 75–2127
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1976.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

William R. Scherer, Fort Lauderdale, Fla. (Court-appointed), for petitioner-appellant.

Stephen R. Koons, Asst. Atty. Gen., Robert L. Shevin, Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before BROWN, Chief Judge, GOD-BOLD and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

After exhausting all his available state remedies, Louis Ford filed a petition for a writ of habeas corpus in Federal District Court, attacking concurrent sentences of 15 years and 5 years imprisonment imposed after a jury finding of guilty, in the Criminal Court of Record for the crimes of false imprisonment and aggravated assault. The primary ground of attack in Ford's petition was that he was in effect denied his Sixth Amendment right to counsel in his trial. After a hearing on the writ the Federal District Court putting it in terms of whether "petitioner knowingly, intelligently and willingly waived his right to counsel" denied petitioner's writ. While the conclusory effect of the denial was as positive an answer as could be contrived, the Judge's words are all-revealing: "By a hairsbreadth only, this court concludes he did so." We reverse.

The problems in this case arose when several days before his trial was to begin on May 7, 1973, Ford learned for the first time that his privately retained counsel had, at one time, been disbarred from practicing law in Florida for a two year period. This was especially unsettling to the defendant Ford because the prosecuting attorney for the Florida Bar, Mr. Daniel Futch, Jr., at the disbarment proceeding of Ford's retained counsel was now Judge M. Daniel Futch, Jr., Ford's presiding Trial Judge for this case. The case had been delayed earlier at petitioner's request, but apparently neither retained counsel nor the Trial Judge felt recusal was necessary. Nevertheless upon petitioner Ford's learning of the previous disbarment proceedings, and communicating with retained counsel on May 4, Ford's counsel filed a motion to have Judge Futch disqualify himself or, in the alternative, grant a continuance so that Ford might find new counsel. This motion was denied for its untimeliness.

Ford, after the Judge refused the recusal, stated he was going to fire his counsel whereupon the Judge told Ford he could discharge his lawyer if he liked, as long as he knew he was going to trial that same day with or without a lawyer. Ford replied to the Trial Judge that he

did not know anything about the law himself, but if that was the only way he could do it and not have his present lawyer involved then he would just do the best he could. Ford stated he did not want to cause a "hassel" to the Court but that since he became aware of the previous disbarment proceedings and the Judge's previous involvement with it, he was simply trying to be fair to himself and again reiterated his desire for legal help. The Judge again rejected Ford's request and ordered him to start picking his jury.

Ford's retained counsel then contacted another lawyer who came to the courthouse and informed the Trial Judge that he would try to help Ford but stated he could not try the case that same day. The Judge declined to let this attorney confer with Ford since he had not filed an appearance and continued to insist upon immediate trial.

After jury selection with Ford acting pro se had begun the Judge called Ford and the prosecutor into a room and offered to appoint the Public Defender for Ford and also continue the trial two days but told Ford in doing so he would also revoke Ford's bond.

The District Judge below described the events which culminated in this occurrence with what has to be one of the classic understatements of the decade:

> Initially, petitioner was confronted with the option of representing himself or being represented by an attorney whom he considered to be highly detrimental to his ability to receive a fair trial. Petitioner chose the former course. Later petitioner was offered a continuance so that a public defender could be appointed to represent him, but the price for this was the revocation of his bond. Petitioner declined the offer. If not technically a Hobson's choice, it was perilously close and [was] qualified as a practical matter.

But soon all the "technical" deficiencies of Lieutenant Thomas Hobson's, the Cambriage carrier, choice were gone for the Trial Judge, after Ford declined the offer of assistance by the Public Defender coupled with the mandatory withdrawal of his bond, Judge Futch withdrew bail anyway.

Now comes what Florida asserted and the District Judge reluctantly accepted, the waiver of the right to counsel which Ford had so vigorously demanded. After the bond had been revoked this exchange took place:

> The Judge: What you are telling me is you don't want me to appoint the public defender and continue the case until Wednesday, is that right?
>
> Ford: No sir, I am saying this, Judge is that I just rather go to trial this morning. No use in prolonging it. Whatever is going to happen is going to happen.

So then, the primary issue presented to this Court is whether Ford did in fact knowingly, intelligently, and willingly waive his fundamental right to assistance of legal counsel at his criminal trial.

■ The Sixth Amendment and thus the element of Due Process under the Fourteenth Amendment guarantees the right to the assistance of legal counsel at criminal trial. The assistance of counsel is a requisite to the very existence of a fair trial and the Sixth Amendment assures that a defendant cannot be deprived of personal liberty, whether the crimes charged are classified as petty, misdemeanor, or felony, unless he has legal counsel at trial, or he has understandingly, intelligently and voluntarily waived the assistance of legal counsel. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

■ In Federal Habeas Corpus proceedings concerning the willing waiver of legal counsel the burden in a silent record is on the state to show such a

fundamental waiver. *Wynn v. State,* 5 Cir., 1971, 446 F.2d 341. The right to legal counsel can be waived only by a voluntary and knowing action. A waiver of a known right will not be lightly presumed, in fact the Trial Judge must indulge every reasonable presumption against waiver of so fundamental a right. *United States v. Shea,* 5 Cir., 1975, 508 F.2d 82. Such serious determination of waiver is the responsibility, obligation and duty of the Trial Judge and it shall depend upon the facts and circumstances and surroundings of each particular case and upon the background, experience, and conduct of the defendant and such determinations should appear plainly on the record. *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

▪ We cannot agree that under the circumstances, this 45 year old man, with a tenth grade education, after stating several times he did not understand the law and desired legal assistance, did in fact, intelligently and voluntarily waive his right to legal assistance in this criminal trial. Nor can a single statement made in conference with the Trial Judge and prosecutor, after a long series of events—which may be confusing but in what at every turn Ford demanded the services of effective counsel—be characterized as a knowing, intelligent and voluntary waiver of a known right.

After all, the offer was not unconditional. The offer of the Public Defender was tied to bail revocation and thus a loss of freedom for which there is no record justification other than Ford's insistence on counsel intuitively based on nothing less than a constitutional guaranty.

▪ Furthermore, with no record showing that Ford was, or was claiming to be an indigent, he was not offered a free choice of counsel. On the contrary the Trial Judge attempted to compel the defendant to accept a lawyer he did not want even with the knowledge that a private lawyer sent over by his discharged counsel had tried to consult with Ford. In court appointment situations the Trial Judge has to have wide discre-

tion and the defendant need not be left to pick, choose, reject or prefer on his own. But in the coercive circumstances of this case, representation by an "unwanted" lawyer, the offer of appointment after the jury selection process was actually under weigh, and made on the high price of forfeiting contemporary personal freedom is much less than the Sixth Amendment commands. As the Trial Judge was in the very center of all we have no problem with *Fitzgerald v. Estelle,* 5 Cir., 1975, 505 F.2d 1334 (en banc). *Faretta v. State of California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The District Judge was right in his hunch, *see* J. C. Hutcheson, Jr., The Function Of The "HUNCH" In Judicial Decision, 25 Ga.B.J. 127 (Nov.1962), which we now give the imprimatur of law. Accordingly the writ should issue unless the state retries Ford within a reasonable time to be fixed by the District Court.

Reversed.