**Tommy POTTS, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 75–2101.**

United States Court of Appeals, Fifth Circuit.

March 29, 1976.

H. Douglas Laycock, Austin, Tex. (Court appointed), for petitioner-appellant.

Paul R. Gavia, Patrick P. Rogers, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, SIMPSON and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Tommy Potts was convicted by a jury of murder and sentenced to twenty-five years in the custody of the Texas Department of Corrections. His conviction was affirmed on direct appeal by the Texas Court of Criminal Appeals. *See Potts v. State*, 500 S.W.2d 156 (Tex.

Cr.App.1973). Appellant's subsequent application for state habeas corpus relief was denied by the trial court without a hearing, and this denial was affirmed per curiam by the Court of Criminal Appeals. Appellant then filed a section 2254 habeas petition in federal district court. See 28 U.S.C. § 2254. The latter petition was also denied without a hearing, and the appeal at bar followed.

The principal object of appellant's collateral attack on his state murder conviction is the prosecution's use of ten previous misdemeanor convictions received over a period of approximately seventeen years to impeach the "self defense" testimony proffered by appellant at his trial. Appellant alleges in his federal petition that he was not represented by counsel at any stage in the disposition of these misdemeanors and that use of these prior convictions for impeachment purposes violates the rule of *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), as applied retroactively in *Berry v. Cincinnati*, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187 (1973). In his state habeas petition, which is incorporated by reference in the federal petition, appellant further alleges that he did not waive his right to counsel at the times of the misdemeanor prosecutions. On the strength of these allegations and for the following reasons, we remand appellant's petition to the district court for an evidentiary hearing.

■ The State of Texas initially contends that appellant's federal habeas petition is materially deficient because it does not allege indigency at the times of the misdemeanor convictions with sufficient clarity. Though it is a close question, we are of the opinion that appellant's *pro se* petition could not be dismissed on the basis of an inadequate allegation of indigency. The standard against which we measure *pro se* complaints and petitions is and should be loose enough to accommodate the inartful pleader. See *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652, 653–654 (1972); *cf. Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Admittedly, at no point in the pleadings filed in state and federal courts does appellant explicitly allege that he was indigent at the times he suffered the misdemeanor prosecutions and convictions. The emphatic reliance in his pleadings on *Argersinger* and *Berry*, however, delineates the nature of the federal claim asserted: an improper use of convictions obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). See *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Coupled with the reliance on *Argersinger* and *Berry*, appellant's additional allegation that he did not waive his right to counsel provides the functional equivalent of an express allegation of indigency. Examining appellant's pleadings in a manner consistent with *Haines*, we cannot say that it appears "beyond doubt that [appellant] can prove no set of facts in support of his claim which would entitle him to relief." See *Haines v. Kerner*, 404 U.S. at 521, 92 S.Ct. at 596, 30 L.Ed.2d at 654. Accordingly, we hold that the district court erred in not affording appellant an opportunity to demonstrate his indigency at the times of his misdemeanor convictions. Moreover, if on remand appellant can establish his indigency at the times in question, *see Kitchens v. Smith*, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971), the district court must then determine whether appellant knowingly and intelligently waived his right to counsel. See *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Wynn v. Smith*, 446 F.2d 341, 349 (5 Cir. 1971); *Goodwin v. Smith*, 439 F.2d 1180, 1182–83 (5 Cir. 1971); *Hillyer v. Dutton*, 379 F.2d 809 (5 Cir. 1967); *Davis v. United States*, 376 F.2d 535 (5 Cir. 1967).

Of the ten misdemeanor convictions used to impeach appellant's testimony, only six resulted in actual imprisonment

for appellant.[1] The findings and conclusions of the United States Magistrate, adopted by the district court as its own, were to the effect that the prosecution's use of these six misdemeanor convictions was harmless error. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As the Court of Criminal Appeals had done before him, the Magistrate assumed that the uncounseled convictions for which imprisonment had not been assessed were admissible for impeachment purposes. He found the additional damage to appellant's credibility through introduction, albeit unconstitutional, of the misdemeanor convictions for which imprisonment had been assessed to be of a low order.

1. The following table displays appellant's prior convictions.

| DATE OF CONVICTION | CHARGE | MAXIMUM POSSIBLE PENALTY | IMPRISONMENT IMPOSED |
|---|---|---|---|
| 12/16/53 | Procuring | Six months imprisonment plus $200 fine | None |
| 12/16/53 | Procuring and Vagrancy | Procuring same as above; $200 fine for vagrancy | None |
| 12/16/53 | Procuring | Same as above | 30 days |
| 10/17/55 | Worthless Check | Two years imprisonment plus $1000 fine | None |
| 10/16/58 | Procuring, reduced to Vagrancy | Vagrancy same as above | None |
| 6/24/60 | Procuring | Same as above | 60 days |
| 1/13/65 | Procuring | Same as above | 30 days |
| 2/25/65 | Procuring | Same as above | 60 days |
| 2/17/66 | Procuring | Same as above | 30 days |
| 9/15/70 | Worthless Check | Two years imprisonment plus $2000 fine | 30 days |

In *Argersinger* the Supreme Court left open the question of Gideon's application to the situation where the maximum possible sentence for a particular offense is imprisonment, but the sentence actually imposed is only a fine or a term of imprisonment that is suspended. 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538. In *Thomas v. Savage*, 513 F.2d 536 (5 Cir. 1975), a habeas petitioner challenged the prosecution's use of an uncounseled misdemeanor conviction in the punishment stage of his state trial for robbery by assault. The misdemeanor conviction at issue—aggravated assault—carried a possible maximum sentence of two years imprisonment and a $1000 fine. Though ultimately holding admission of the misdemeanor conviction to be harmless error, the panel in *Thomas* did answer the question left open in *Argersinger*.

> The necessity for counsel is judged by the maximum penalty the defendant *may* receive. . . . In this respect the cases of this circuit go beyond the Supreme Court's decision in *Argersinger v. Hamlin*, . . ., which would only require the appointment of counsel when a sentence of imprisonment is imposed.

513 F.2d at 537 (emphasis in original); *See Olvera v. Beto*, 429 F.2d 131 (5 Cir. 1970).

The answer provided by the "cases of this circuit" to the *Argersinger* question has not, however, always been the same. In *Cottle v. Wainwright*, 477 F.2d 269 (5 Cir. 1973), petitioner was, following his release on parole, convicted without the benefit of counsel on a charge of public drunkenness. The municipal court imposed the maximum penalty of twenty days imprisonment, but suspended the sentence. Approximately one month later, petitioner was again convicted without the assistance of a lawyer on a charge of public drunkenness, and the municipal court imposed an unsuspended sentence of twenty days. As might be expected, petitioner's parole was revoked following the second conviction. Challenging the revocation by way of habeas corpus, petitioner contended that reliance by the parole board on his convictions for public drunkenness ran afoul of *Argersinger*. After correctly anticipating the retroactivity of *Argersinger*, both the majority of the panel, 477 F.2d at 273, and their concurring brother, 477 F.2d at 277, held that *Argersinger* applied only to the second misdemeanor conviction, for which imprisonment had actually been imposed.[2]

▪ Confronted with the choice between *Cottle* and *Thomas*, we follow the latter. *Accord Olvera v. Beto, supra; Matthews v. Florida*, 422 F.2d 1046, 1048 (5 Cir. 1970); *James v. Headley*, 410 F.2d 325, 329 (5 Cir. 1969). The logic of our choice should be clear. By dint of the serious problems associated with the prosecution of misdemeanors, the great concern in *Argersinger* was with the salutary contributions to be made through the presence of a lawyer in the courtroom representing the interests of the accused. 407 U.S. at 36–37, 92 S.Ct. at 2012, 32 L.Ed.2d at 537–538. The issues that arise in misdemeanor prosecutions are often complex and beyond the usual competence of the accused. Whether a sentence of imprisonment is or is not ultimately imposed has little bearing on the complexity of those issues or the ability of the accused to defend himself in the circumstances. Indeed, it may be that the most reliable barometer of the potential problems that can arise in such prosecutions is the maximum penalty the legislature has seen fit to designate for a particular misdemeanor.

Application of the *Cottle* rule, which looks to the punishment in fact assessed, can lead to curious practical results. For example, where co-defendants are tried together, the judge or the jury, as the case may be, sometimes imposes different sentences on the different co-defendants. Under the *Cottle* rule, a situation can arise where a co-defendant who is convicted but has his sentence suspended is not protected by *Argersinger*, but his co-defendant—convicted of the same crime—is not subject to later impeachment with his conviction because he is the recipient of a jail term. *See Aldrighetti v. State*, 507 S.W.2d 770, 773–75 (Tex.Cr.App.1974) (Onion, P. J., dissenting). The rule of *Thomas* avoids the type of situation depicted above and is, we believe, consonant with the concerns expressed by the Supreme Court in *Argersinger*. For these reasons, we hold that the necessity of counsel in appellant Potts's prior misdemeanor prosecutions is to be judged by the maximum possible sentence he could have received in each of those prosecutions.

All but one of the ten misdemeanor convictions introduced to impeach appellant's testimony at his state murder trial carried a potential sentence of imprisonment. Only appellant's vagrancy conviction in 1958, *see* note 1 *supra*, was limited in possible punishment to a fine, and vagrancy convictions are themselves rightfully subject to a healthy dose of

---

2. The decision in *Cottle* was vacated by the Supreme Court on other grounds and remanded for reconsideration in light of *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *See Cottle v. Wainwright*, 414 U.S. 895, 94 S.Ct. 221, 38 L.Ed.2d 138 (1973), *on remand*, 493 F.2d 397 (5 Cir. 1974). The holding of the original *Cottle* panel that *Argersinger* only applied to the second misdemeanor conviction stands unaffected by the subsequent procedural events.

skepticism. *Argersinger v. Hamlin,* 407 U.S. at 33, 92 S.Ct. at 2010, 32 L.Ed.2d at 536; *see Papachristou v. Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1974). In consequence, if appellant Potts is able to establish prior indigency and the district court finds an absence of knowing and intelligent waivers at the times of the prior misdemeanor prosecutions, it will be the case that nine of the ten misdemeanor convictions used to impeach appellant were admitted in violation of *Argersinger.* See *Thomas v. Savage, supra.* Whatever may be the merit of the State's harmless error argument given a different ratio between convictions properly admissible and those subject to exclusion under *Argersinger,* the argument carries little weight where the actual ratio is one to nine.

 Appellant was tried for the murder of an innocent bystander struck by a bullet intended, the State successfully argued to the jury, for appellant's brother. It was appellant's testimony at trial that his brother advanced upon him with a large knife and that the fatal bullet was fired at the floor to discourage further advances by his attacker.[3] The success of appellant's testimony hinged in large measure on the credibility assessment made of him by the jury. The State's use of the misdemeanor convictions went, of course, directly to the question of appellant's credibility. We reject the State's argument that introduction of the nine uncounseled misdemeanor convictions was harmless error beyond a reasonable doubt.[4] *See Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *Chapman v. California, supra.* On the contrary, if appellant is able to satisfactorily establish indigency at the pertinent times, and the district court determines that appellant did not knowingly and intelligently waive his right to counsel at those times, it follows that the writ must issue unless the State retries appellant within a reasonable time to be determined by the district court. It must be borne in mind that given a silent record, the burden is on the State to demonstrate the appropriate waiver, *Ford v. Wainwright,* 526 F.2d 919 (5 Cir. 1976); *Wynn v. Smith, supra,* and every reasonable presumption against waiver must be indulged by the court below. *United States v. Shea,* 508 F.2d 82 (5 Cir. 1975).

Accordingly, we reverse and remand the case for proceedings in the district court consistent with this opinion.[5]

---

3. Both appellant and his brother testified that the fatal bullet was fired at the floor as a warning shot. The jury was instructed on both self-defense and accident. *See Potts v. State,* 500 S.W.2d 156, 157 (Tex.Cr.App.1973).

4. The State argues that the failure of appellant's attorney to object at the time the misdemeanor convictions were introduced supports its contention that introduction of these convictions was harmless error. Brief for Appellee at 8. We are not bound, in making our harmless error determination, by the appraisal of importance or unimportance reflected in an attorney's failure to object at trial. The proper test, and the one we apply, is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1964), *quoted approvingly in Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 710 (1967).

On another, related matter, the State cannot contend that failure to object at the time of trial constituted a waiver and precludes appellant's sixth amendment challenge. It need only be noted that appellant was convicted on November 19, 1971, and the decision in *Argersinger* was not handed down until June 12, 1972. *See Berry v. Cincinnati,* 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187 (1973).

5. We have examined petitioner's other contentions and find them to be without merit. *See Dumont v. Estelle,* 513 F.2d 793 (5 Cir. 1975).