**UNITED STATES of America,**
**Appellee,**

v.

**Alfred BRAWER et al., Defendants-**
**Appellants.**

**Cal. Nos. 612–614, Dockets 72–2199,**
**72–2201 and 72–2215.**

United States Court of Appeals,
Second Circuit.

Decided Post-Remand May 3, 1974.

Alfred I. Rosner, New York City, for defendants-appellants Alfred Brawer and Ralph Ignomirello.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City and Kenneth C. Bass, III, Reston, Va., of counsel, for defendant-appellant Wassil Kreshik.

Paul J. Curran, U. S. Atty. S. D. N. Y., New York City, Elliot G. Sagor and John D. Gordan, III, Asst. U. S. Attys., of counsel, for appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

Upon the appeal in this case, 482 F.2d 117 (2d Cir. 1973), both in brief and on argument, appellants Alfred Brawer, Ralph Ignomirello and Wassil Kreshik

claimed for the first time that the Government had improperly suppressed exculpatory evidence which could have been used to impeach the key government witness, Maucelli. In response the government conceded that a post-trial examination of its files revealed that in April 1969 certain statements had been taken from three Canadians, Welsch, Bubic and Riel, allegedly involved in the attempt to sell the Treasury Bills, the subject of the prosecution, which statements had not been made available to the appellants. Accordingly, to make certain that non-disclosure of the April 1969 statements, admittedly in the government's possession, was neither a violation of appellants' rights, nor a violation of the prosecutor's obligations, under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), we remanded the case to the District Court to determine "after reading and considering such material as the government may have had in its files" "whether the government improperly denied appellants access to the material," or otherwise stated whether the material was of such an exculpatory nature that it "in any reasonable likelihood [would] have affected the judgment of the jury." Napue v. Illinois, 360 U.S. 264, 271, 79 S. Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959). Therefore, since "absent a finding of improper suppression of material evidence" we believed that the evidence justified affirmance of the convictions, we remanded to "await both a ruling by the district court on the *Brady* issue and the expanded record before making final disposition of this appeal."

Judge Pollack has now submitted his findings and opinion after a most thorough hearing at which the parties submitted not only documentary proofs—in particular the April 1969 statements—but also certain grand jury minutes and handwritten notes of Assistant United States Attorneys. In addition, he heard the testimony of appellant Kreshik.

Parenthetically, it may be said of Kreshik that this Court had originally written that "The record tends to support Kreshik's contention [namely, that he had no knowledge of, or involvement in, the events subsequent to his delivery of the Bills to Brawer] * * *" and that as to guilty knowledge it was "a close question as regards Kreshik." These views are substantially modified by Judge Pollack's findings, after hearing Kreshik's testimony in the post-trial hearing, that his testimony as to knowledge (or, better, lack thereof) of the Canadians and his connection with the stolen Bills was "plainly incredible." Kreshik did not testify at the trial. His post-trial hearing testimony evoked the following comments from Judge Pollack:

> The demeanor evidence and the reasonable inferences to be drawn from his assertions and denials, in the light of all the facts and circumstances disclosed by the trial and hearing records, render his testimony wholly unworthy of belief on his oft repeated assertion in this Court and in the Court of Appeals that he lacked guilty knowledge of who was involved, what was going on and what he was doing to facilitate the criminal venture.

> In addition to taking the evidence adduced at the hearings, the Court has read and considered such material as was contained in the government files, as well as certain other documents, to be discussed at length below, which purport to bear in some way upon the characterization and relevance *vel non* thereof.

> Based on the foregoing, and for the reasons indicated hereafter, the Court finds and reports that the 1969 statements and data referred to by the Court of Appeals in no wise fit the description of "exculpatory evidence" as defined in *Brady* and its progeny.

Little useful purpose would be served in restating Judge Pollack's exhaustive (69 pages) findings and his well-grounded conclusions except as they relate to the April 1969 statements (the purpose of the remand). 367 F.Supp. 156 (S.D. N.Y.1973).

On the trial, defendants Brawer and Ignomirello knew of the three Canadians and their participation in the attempted sale. Full opportunity to obtain their testimony, if it would have been beneficial, was available. Furthermore, Kreshik's guilt was not dependent upon the Canadians' testimony. "The Canadians would not have aided Kreshik because, as everyone agrees, Kreshik did not deal directly with them." 367 F.Supp. at 166.

As to the 1969 statements themselves, since appellants' claim of inconsistency centers around the discount and rate thereof (65%–90%) at which the stolen Bills were allegedly offered, Judge Pollack found that:

> The 1969 statements of the Canadians were not in fact exculpatory.

In further elaboration, he said:

> In none of Riel's four "statements" does he specifically state the price which Maucelli asked for the Bills nor does he contradict Maucelli's trial testimony that the original price asked was 85% or 90% of face value, less Riel's own commission, and that the final price was 65% of face value.

Bubic mentioned a 90% discount as to which Judge Pollack said:

> This recitation of an opening gambit of 90%, with further negotiations to follow, is consistent with Maucelli's trial testimony. Bubic's statement does not advert to and consequently does not specifically deny the 65% figure authorized by Brawer. Furthermore, insofar as the nonincriminatory facts of his dealings with Maucelli are concerned, e. g., the dates of Maucelli's travel, Bubic's statement is consistent with Maucelli's trial testimony.

Concerning Welsch, the Judge said: In neither of the two "statements" of Joseph Welsch, exhibits 5A, 5B, 5C, and 6 herein, does he refer to the price which Maucelli asked for the Bills. Furthermore, the transactional facts which Welsch does recount are consistent with Maucelli's trial testimony with only one insignificant exception, viz., Welsch's claim that Maucelli was interested in investing in the Canadian firm, and was not interested in selling the Bills.

Judge Pollack summarized the effect of non-disclosure as follows:

> Placed in perspective, the brouhaha created over the non-disclosure of the 1969 statements appears to be a contrived issue wholly lacking in merit. It was created on appeal out of a tissue of confusion and legerdemain on someone's part.

As to any bad faith on the part of the prosecutor, Judge Pollack held:

> The prosecutor did not know of the existence of contradictory evidence which would cast doubt on the validity of Maucelli's discount evidence which was presented at trial. No contradictory evidence in fact appears in any of the 1969 statements.

Armed with Judge Pollack's findings and opinion, we are satisfied that there has been no violation of the principles of *Brady, supra,* and affirm all convictions.