Alfred BRAWER, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 78 Civ. 3513 (MP).

United States District Court, S. D. New York.

Dec. 13, 1978.

Alfred Brawer, pro se.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York by Mark F. Pomerantz, Asst. U. S. Atty., for respondent.

## DECISION

POLLACK, District Judge.

This is a motion pursuant to 28 U.S.C. § 2255 for an order vacating the sentence and judgment of conviction entered on Indictment 72 Cr. 64 (MP). The United States Attorney has filed a lengthy memorandum in opposition to Brawer's motion, and the issues raised by the motion have been fully considered by the Court. For the reasons set forth below, the motion must be denied.

Petitioner was convicted in July 1972, on three counts of conspiracy to transport and transporting stolen United States Treasury bills in interstate and foreign commerce. Concurrent sentences of five, seven and seven years were imposed, and Brawer is now out of prison and under parole supervision in Nevada. On direct appeal the Court of Appeals remanded the case for consideration of a new claim that the government had improperly concealed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See United States v. Brawer*, 482 F.2d 117 (2d Cir. 1973). This Court held a hearing and found no violation of *Brady v. Maryland, supra,* had been established. *See United States v. Brawer*, 367 F.Supp. 156 (D.C.1973). The Court of Appeals adopted the findings of this Court on the *Brady* issue and affirmed the convictions of all of the defendants. 496 F.2d 703 (2d Cir. 1974). The Supreme Court denied certiorari. 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974).[1]

Brawer now moves to vacate his sentence and conviction, alleging several grounds for relief. Primarily, Brawer asserts that prior uncounseled convictions were used to impeach his trial testimony in violation of *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). Brawer also complains that he and his counsel were not permitted to inspect or to correct inaccuracies in his presentence report, that he did not receive effective assistance of counsel, and that testimony concerning his prior criminal record was introduced for the improper purpose of showing his criminal disposition. Brawer has also requested that the Court recuse itself from decision of this motion.

Briefly, the proof at trial showed the petitioner to have been the moving force behind the attempted negotiation of $262,-000 worth of stolen United States Treasury bills in the spring of 1969. The evidence established, and the jury by its verdict found, that the bills had been stolen and that Brawer and his co-defendants knew this when they attempted to sell the bills in Canada and Switzerland.

Brawer and co-defendant Ralph Ignomirello were jointly represented at trial by James Horan, Esq. Their defense was three-fold. First, they disputed the sufficiency of the government's proof that the Treasury bills had been stolen from the Francis I. duPont & Co. brokerage house. Second, they denied any knowledge that the bills were stolen. Finally, they launched a sharp attack on the credibility of Salvatore Mauceli, an accomplice witness who pleaded guilty before trial and who testified for the government.

As part of the defense of the case, Alfred Brawer testified on his own behalf. The transcript of his trial testimony indicates that his prior criminal record was inquired into first on *direct examination* by Mr. Horan, Brawer's attorney:

"DIRECT EXAMINATION
BY MR. HORAN:
Q. Mr. Brawer, have you ever been convicted of a crime?

---

1. In 1975, Brawer moved for a new trial based on allegedly newly discovered evidence. The motion was denied by this Court on August 18, 1975.

A. Yes, I have.

Q. Tell us about it, will you?

A. In respect to the many times that I have been convicted, all collectively or singly?

Q. Were you convicted more than once of a crime?

A. Yes, I was.

Q. When was your first conviction?

A. Memory will not serve me to dates. I would appreciate it if you tell me the dates and I will corroborate them.

Q. All right.

In the years 1935 to 1939, were you involved in a conviction of a crime at that particular time, within that period of time?

A. In '35 to '39?

Q. Right.

A. 37 years, let me see. If you have a date there I must have been.

Q. Well, I have some information here—
THE COURT: Mr. Horan, please let the witness testify. When you start out by indicating that you have information, you are putting yourself in the posture of giving the testimony. I think you should ask the witness the questions.

Q. Do you recall when you had been convicted of a crime, Mr. Brawer, on your own matter of knowledge at this particular time?

A. I believe I recall fairly accurate in a sequential order of events in which I have had legal difficulty, convicted, imprisoned and otherwise. May I recite them in order? Then I will try. But to date exactly, I cannot.

Q. That's enough for now."

At this point Brawer's testimony was interrupted so that another defense witness could testify. Brawer later retook the witness stand, however, and—still on direct examination—elaborated further on his record:

"Q. Have you done work for the Federal Bureau of Investigation?

A. I certainly have.

Q. For how many years?

A. Covering a period of 16 years or better.

Q. Did that work that you did for the FBI—what year did that begin, do you recall?

A. The first beginning was approximately 1953.

Q. You testified this morning that you had been convicted of a crime. Did your work for the FBI begin subsequent to your having been convicted of a crime?

A. Subsequent and during.

Q. During your conviction?
THE WITNESS: During a specific conviction.
THE COURT: A conviction occurs at a date.
THE WITNESS: I haven't been asked that yet, your Honor. I am just answering directly.

\* \* \* \* \* \*

Q. I believe, Mr. Brawer, in response to one of my questions, you stated that you had been working for the FBI during a period of a conviction; is that correct?

A. That's right, sir.

Q. Would you explain that?

A. Yes. I had begun working with the FBI specifically at their request coming out of retirement after any last convictions that I have ever had, but one of the cases in which I was working on under the direct advice and instructions and comparisons of decisions ended in my arrest, and subsequent conviction while yet being with the department and I served time on that, despite everything the department and every other agency of this country could do to overcome it. That's what I meant by during a conviction.

Q. Was any effort by that or any other agency made to help you at the time of that difficulty?

A. Almost every law enforcement agency in the country attempted to do it, but it was impossible at the time.

Q. That is, come to your aid and assistance?

A. Oh, no, they came to my aid and assistance, but in the area where this particular action took place, there is no Federal law enforcement agency in the world that could upset the local constabulary's desires, and I couldn't get taken out.

MR. HOROWITZ: Your Honor, I am going to move to strike that answer.

THE COURT: Strike that out. The jury will ignore this entire statement on the part of this witness. Pay no attention to it. Erase it from your minds."

The tactical reason for this foray into Brawer's past became apparent in defense counsel's closing argument. There, Mr. Horan attempted to portray the petitioner as a person who had put his troubles with the law behind him and, at considerable peril to himself, become an undercover agent for the FBI:

"He also told you about his work as an undercover agent, sixteen years with the FBI. I don't have to tell you; I am sure all of you read the paper, and particularly these days, with television and everything else, we are far more acquainted with these days with the work of an undercover agent than we would have been probably ten or fifteen years ago."

"As you know, the undercover agent's work is pretty risky. An undercover agent infiltrates. He infiltrates into areas where it is dangerous, that he can't do so openly, and probably where he is not supposed to be, and if his presence is known, that there is an undercover agent for the FBI, you know what could happen to him."

\*    \*    \*    \*    \*    \*

" .    .    . The reason I am bringing that up is you also heard Mr. Brawer say about having been convicted of a crime.

Just remember the dates we were talking about. Mr. Brawer may not have been an angel many, many, many years ago, but whatever he was then, he is not now and he was not in the year 1969, either, because for sixteen years prior to 1969 he had been what he said he was: an undercover agent for the FBI.

During that period of time, except for one incident, he was involved with the FBI for all that time and for one incident in that period of time many, many, many years ago, he had been convicted of a crime while still—prior to that conviction, during that conviction and subsequent to that conviction—an undercover agent for the FBI."

On cross-examination of Brawer, the government inquired into his criminal record and his alleged relationship with the FBI. Neither the defendant nor his counsel objected to this line of questioning. Indeed, at one point Brawer attempted to ask to see his criminal sheet in order to help him remember the dates of his convictions, but the Court denied the request and directed that he answer the questions put to him. Mr. Horan did not object, but interjected to say:

Excuse me, your Honor. I believe this is an important area. I am only interested in the witness clearly understanding before the jury that the question was in relation to convictions, not to charge, but to conviction."

"That's all."

Evidence of four prior convictions was elicited by the government. Brawer admitted to a conviction in 1939 or 1940 for breaking and entering. He denied having been convicted in Kansas in 1949 for grand larceny, claiming that there had been only what he termed "a private arrangement in the court building." He admitted having been convicted of possession of stolen property and conspiracy in 1951, and also of blackmail in 1955, although he claimed that his sentence on the latter charge was "arranged" for him by the FBI. There was no claim during trial that any of these prior convictions had been obtained without benefit of counsel.

In the instant motion, filed some six years after his trial, Brawer complains for the first time that some of his prior convictions were constitutionally infirm. To support this claim Brawer has attached copies of three recently-obtained judgments vacating certain of his prior convictions. The first of these is dated August 12, 1977 and relates to Brawer's 1939 conviction for breaking and entering, and purports to establish that Brawer did not have the benefit of his Sixth Amendment right to counsel at that time. The second, dated October 12, 1977, appears to relate to Brawer's 1949 Kansas conviction for grand larceny. The exhibit vacating the judgment of conviction makes no reference to the presence or absence of counsel but refers to the absence of records establishing that the defendant knowingly entered a plea of guilty. Finally, the third attached order vacates a 1935 New Jersey conviction that was never mentioned at Brawer's trial.

In further support of his petition, Brawer appends his own affidavit castigating Mr. Horan for various supposed shortcomings, and a letter to Mr. Horan apparently sent by Brawer on July 25, 1972. There is no affidavit from Mr. Horan.

## I.

Brawer has requested that this Court refrain from ruling on the merits of his petition and assign it to another judge. The bases for the request are (1) the fact that during an earlier prosecution of Brawer before this Court, evidence of Brawer's criminal record was excluded for lack of probative value due to remoteness whereas when Brawer himself on direct examination offered such evidence it was admitted without objection at the later trial, and (2) the Court's failure to address a supposed conflict of interest in Mr. Horan's representation of both Brawer and Ignomirello and, in connection with an I.R.S. investigation, of Mrs. Pirozzi, the widow of the man who initially supplied the Treasury bills to Brawer through the defendant Kreshik.

■ Brawer's request for disqualification is insufficient as a matter of law, and must be denied. First, the disqualification request is not accompanied by an affidavit or a certificate that it is made in good faith, and may be denied on that basis alone. See 28 U.S.C. § 144. Second, the law is clear that the "personal bias or prejudice," 28 U.S.C. § 144, that must be alleged to support a disqualification request must be extrajudicial in nature. That is, it must stem from something other than an opinion formed by a judge in the course of proceedings before him. See, e. g., United States v. Bernstein, 533 F.2d 775, 784–85 (2d Cir.), cert. denied, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); Wolfson v. Palmieri, 396 F.2d 121 (2d Cir. 1968).

Brawer has suggested no extrajudicial source of bias or prejudice. The only facts cited in support of the request stem from the Court's conduct of proceedings at Brawer's trial and in a previous prosecution involving Brawer. While "[t]here may be instances in which a judge's behavior during prior judicial proceedings can demonstrate sufficient friction between the judge and the complaining party to support a finding of bias," United States v. Daley, 564 F.2d 645, 651 (2d Cir. 1977), cert. denied, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978), Brawer has not suggested that this is such a case. Brawer has made no specific allegations that any prior proceeding has been conducted "in a manner which even faintly suggested bias." United States v. Daley, supra, 564 F.2d at 651. Accordingly, the request for disqualification must be denied.

## II.

■ Brawer's first claim is that his 1972 trial and conviction are constitutionally infirm because evidence of prior uncounseled convictions was used to impeach his testimony at trial. Brawer relies upon Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), in which the Supreme Court held that convictions obtained without benefit of counsel in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), could not be used to impeach a defendant's trial testimony and that the use

of such convictions could be a basis for habeas corpus relief. This claim nevertheless fails for four reasons.

First, Brawer has not put forth or even suggested the existence of sufficient evidence to establish that the four prior convictions about which he was questioned were obtained in violation of *Gideon v. Wainwright, supra.* No preliminary showing has been made that the convictions were obtained without benefit of counsel and that petitioner lacked the funds needed to retain his own lawyer at the times he was convicted.[2] The only evidence submitted by Brawer are the three state court orders attached to his petition. The first relates to his 1939 conviction and does vacate his conviction on the ground of a deprivation of the right to counsel, but appears to do so only because no records exist—after 38 years—verifying whether Brawer was represented by counsel when he entered a guilty plea. The second order appears to relate to the 1949 conviction, and again vacates the conviction only because records do not exist to "conclusively show that the defendant did at any time knowingly enter a plea of guilty." The Court makes no mention of a denial of the right to counsel as a basis for its action. Finally, the third order relates to a 1935 conviction, about which Brawer was not examined at trial. Nothing whatsoever has been submitted to challenge the validity of the 1951 or 1955 convictions. Thus, Brawer has not shown sufficient facts that would entitle him to an evidentiary hearing on his claim that all of the convictions about which he was questioned were unconstitutionally obtained.

Second, Brawer has waived his right to an evidentiary hearing and to any relief on this ground because the allegedly infirm convictions were first brought out at trial on direct examination by Brawer's own attorney. That questioning appears to have been the result of a deliberate and not unreasonable tactical decision by the de-

fense, and Brawer cannot be heard to complain of the government's proper elicitation of details of a topic raised in direct examination. By testifying on direct examination that he had been convicted "many times," Brawer deliberately bypassed whatever rights he had to insulate himself from questions about prior convictions. *See Subilosky v. Moore,* 443 F.2d 334, 336 (1st Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971).

Brawer's waiver of his right to exclude the uncounseled convictions is further established by the lack of any objection to the government's cross-examination about his record. The rule is well settled that, in the absence of plain error, a timely objection must be interposed to preserve any claim based on the erroneous introduction of evidence. *See, e. g., United States v. Indiviglio,* 352 F.2d 276 (2d Cir. 1965) (*en banc*), *cert. denied,* 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). Brawer's contention in his Memorandum that he was ordered to testify "over the objection of" his attorney is totally without support in the record. Mr. Horan neither made an objection nor was prevented by the Court from making one. Nor is this a case of plain error. Neither the Court nor the government had any reason to suspect that Brawer's prior convictions might be invalid because obtained without counsel. The fact that the claimed error involves Brawer's constitutional rights does not excuse the failure to raise a timely objection. *United States v. Indiviglio, supra; see also Estelle v. Williams,* 425 U.S. 501, 508 n. 3, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

Notwithstanding the deliberate bypass of an objection for tactical reasons, Brawer has not shown either cause for or prejudice resulting from the failure to object, showings necessary to entitle him to habeas relief pursuant to 28 U.S.C. § 2255. *Ramsey v. United States,* 448 F.Supp. 1264 (N.D.Ill. 1978). *Cf. Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977);

2. The petitioner has the burden to prove that he was indigent and unable to hire counsel at the time of the challenged convictions. *See*

*Kitchens v. Smith,* 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971) (per curiam).

*Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 15, 77, 36 L.Ed.2d 216 (1973). The only cause cited by Brawer is the allegedly inadequate representation provided by Mr. Horan. Apart from the lack of any factual basis to support this claim, the inadvertence or oversight of counsel does not fall within the Supreme Court's definition of cause in *Wainwright v. Sykes. See Gates v. Henderson,* 568 F.2d 830, 843 n. 6 (2d Cir. 1977) (en banc) (Oakes, J., concurring), cert. denied, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Ramsey v. United States, supra.*

■ Finally, even on the improbable assumption that the admission of testimony regarding the alleged uncounseled convictions was error of which Brawer may complain, this Court finds that the error was harmless beyond a reasonable doubt. The crimes involved were all over 22 years old at the time of trial. The cross-examination on this subject occupied only eight pages out of 100 for the entire cross-examination, in a trial record of more than 1,000 pages. The government did not mention Brawer's record in summation, and there is no reason to think that the jury gave significant weight to the evidence. Given the adverse impact of Brawer's admission on direct examination that he had been convicted several times, the added detail elicited by the government was insignificant and constituted, at most, harmless error. *See Subilosky v. Moore, supra.* To the extent that Brawer's credibility was an issue of importance for the jury, Brawer was effectively impeached by the testimony of the prosecution witnesses and by his own demeanor on the witness stand, making the use of uncounseled convictions harmless. *See Zilka v. Estelle,* 529 F.2d 388 (5th Cir.), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 590 (1976); *Bates v. Nelson,* 485 F.2d 90 (9th Cir. 1973), cert. denied, 414 U.S. 1134, 94 S.Ct. 877, 38 L.Ed.2d 759, cert. denied 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974). *See also Chapman v. United States,* 547 F.2d 1240 (5th Cir.), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977) (harmless error where

use of two uncounseled convictions is merely cumulative to evidence of four valid convictions); *Thomas v. Savage,* 513 F.2d 536 (5th Cir. 1975), cert. denied, 424 U.S. 924, 96 S.Ct. 1135, 47 L.Ed.2d 333 (1976) (use of one uncounseled conviction for purpose of sentence harmless where four valid convictions were in evidence and co-defendants received similar sentences); *United States v. Faulkenberry,* 472 F.2d 879 (9th Cir.), cert. denied, 411 U.S. 970, 93 S.Ct. 21, 61, 36 L.Ed.2d 692 (1973) (use of three presumably invalid convictions harmless in light of undisputed and overwhelming incriminating evidence); *Harrison v. Benton,* 430 F.Supp. 717 (W.D.Okl.1976) (use of four uncounseled convictions harmless error in light of extremely strong case against defendant).

■ Brawer further contends that the convictions were improperly admitted for the purpose of showing criminal disposition. There is absolutely no basis in the record for this claim. As noted above, after the superficial cross-examination on the subject, the government made no further mention of the convictions, and Brawer's attorney mentioned them in summation in support of his argument that Brawer had reformed since his younger days. Furthermore, the jury was instructed that a criminal record may be considered in weighing the testimony of a witness:

> Evidence that any witness, whether he be a defendant or otherwise, has been convicted in the past of criminal conduct may be considered by you in determining his credibility, by which is meant his worthiness of belief.

For the foregoing reasons, Brawer's first claim for relief must be denied.

### III.

Brawer's second claim is that his sentence is invalid because he and his counsel were not permitted to inspect the presentence report and because the report contained false information.

■ The decision to withhold the presentence report from Brawer and his attorney rested within the discretion of this Court.

*See, e. g., United States v. Virga,* 426 F.2d 1320, 1323 (2d Cir.), *cert. denied,* 402 U.S. 930, 91 S.Ct. 1530, 28 L.Ed.2d 864 (1970). Brawer has suggested no reason for believing that discretion to have been exercised improperly, and the nondisclosure of the report entitles him to no relief in this proceeding.[3]

Moreover, the only inaccuracies specified by Brawer relate to the convictions about which he was questioned on direct and cross-examination. Thus, Brawer had ample opportunity to challenge the accuracy of his criminal record, as received in evidence at the trial, notwithstanding the nondisclosure of the presentence report.

In any event, as is clear from the transcript of the sentencing and as the Court hereby reaffirms, the sentence imposed on Brawer by this Court was not influenced by the two convictions now claimed to be invalid. As the Court stated at the sentencing:

> On the evidence, circumstances and inferences established in the record, there is no doubt of this defendant's guilt. He was a principal in the criminal scheme in this case. The crime was given direction and implementation through this defendant.

Brawer's sentence was based not on twenty-three and thirty-three year old convictions for larceny and breaking and entering, but rather upon his central role in the crime then before the Court, of which he had been found guilty. Thus, Brawer's claim for relief is without merit.

## IV.

Brawer's third ground for relief rests on a claim of ineffective assistance of counsel. He complains, first, that trial counsel failed to interview witnesses, promised him an acquittal, did not submit requests to charge,

and otherwise failed to put forward an adequate defense. In addition, Brawer argues that he was denied effective assistance because James Horan, his trial attorney, also represented co-defendant Ralph Ignomirello and Mrs. Pirozzi.

It is clear in this Circuit that before any relief is granted for incompetency of counsel, a lawyer's performance at trial must be so ineffective as "to shock the conscience of the court and make the proceedings a farce and mockery of justice." *United States ex rel. Boucher v. Reincke,* 341 F.2d 977, 982 (2d Cir. 1965). *Accord, e. g., LiPuma v. Commissioner, Dept. of Corrections,* 560 F.2d 84, 90–91 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977); *United States ex rel. Marcelin v. Mancusi,* 462 F.2d 36, 42–43 (2d Cir. 1972), *cert. denied,* 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973). Whether judged by this standard or by some higher standard, the defense put forward on Brawer's behalf was constitutionally sufficient.

Despite Brawer's assorted complaints and second-guesses, the trial record shows that his defenses were clearly and competently placed before the jury. Counsel vehemently attacked the credibility of Mauceli, the government's principal witness, on cross-examination. Brawer's counsel challenged the sufficiency of the proof that the bills in fact had been stolen. Brawer's main defense—that he relied on the advice he received about the bills from a banker and a priest, and did not know that the bills were stolen—was put squarely before the jury through the testimony and on summation. Apart from making scatter-shot allegations about his lawyer's shortcomings, Brawer has not indicated what significant defense was omitted or what favorable evidence was kept out by counsel's incompetence.[4]

---

3. The amendment to Rule 32, Fed.R.Crim.P., subd. (c)(3), relating to disclosure of the report of the presentence investigation became effective December 1, 1975 and is inapplicable to Brawer who was sentenced in 1972.

4. The particular complaints set forth in Brawer's memorandum all dissolve upon close analysis. The names of the "vital witnesses" who

should have been interviewed do not appear. The complaint that there was no discovery hearing fails to mention the discovery that the government provided without a hearing. The "issues of the trial" that counsel should have raised with the Court are unspecified. The failure to raise the admissibility of prior convictions overlooks the tactical decision to inquire

In the end, the jury convicted Brawer not because he had inadequate counsel, but because the evidence in the case proved his guilt beyond a reasonable doubt.

■ Similarly, Brawer's complaints about his attorney's conflicts of interest lack any basis in fact or law. Brawer is not entitled to relief simply because his attorney also represented a co-defendant. Joint representation is not a *per se* violation of the Sixth Amendment right to the effective assistance of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). There was no objection raised at trial to the joint representation of Brawer and Ignomirello. In the absence of such an objection, "to be entitled to relief on grounds of ineffective assistance of counsel arising out of joint representation it must appear that there was an actual or potential conflict of interest between the defendants and some specific instance of prejudice resulting from the joint representation," *"Big Black" v. Regan*, No. 78–2020, slip op. at 4510–11 and n. 2 (2d Cir. August 17, 1978). *See also Salomon v. LaVallee*, 575 F.2d 1051, 1053 n. 3 (2d Cir. 1978).

In this case Brawer has alleged little more than the fact of joint representation. He has come forward with nothing that creates a genuine issue as to actual or potential conflict or prejudice. The claim that Brawer would have called Ignomirello as a witness but for the joint representation lacks anything tending to show that Ignomirello would have testified or, more importantly, that he had something to say that would have helped Brawer. As Brawer himself points out, "the two defendants represented by Mr. Horan presented a unified defense of lack of knowledge." Thus, this is not a case where joint representation posed any dilemma for the defense lawyer. The defense was joint and identical, and nothing in the petition or in the lengthy

record of this case points even to the possibility of conflict or prejudice.

Similarly, Brawer's naked speculation that Mrs. Pirozzi would have testified on his behalf but for Mr. Horan's representation of the Pirozzi estate creates no basis on which to hold a hearing. Both Mrs. Pirozzi and Brawer had an interest in demonstrating that the bills had not been stolen. Had she been able to give favorable testimony on that issue, she undoubtedly would have done so. Brawer has come forward with no affidavit from Mr. Horan or Mrs. Pirozzi, and his reference to Mrs. Pirozzi as "the witness who could clear [him]," is plain nonsense.

In sum, all of Brawer's complaints about his lawyer's competency lack the specific factual underpinning that would entitle him to a hearing. The government's submission on this motion has established beyond peradventure of doubt that Brawer was not prejudiced by his attorney's joint representation of Brawer with a co-defendant. Brawer's claim for relief on this score lacks merit and must be denied.

## V.

■ Finally, Brawer filed on December 1, 1978 a motion for the appointment of counsel pursuant to 28 U.S.C. § 1915(d) and 18 U.S.C. § 3006A(g). This motion is inappropriate at this time, as Brawer litigated his claims *pro se* during the four months that this action has been under consideration. Nonetheless, the Court has considered the request, and finds that the interests of justice do not require the appointment of counsel at this time, as Brawer has already adequately stated his claims before the Court. Furthermore, in view of the finding herein that Brawer is not entitled to an evidentiary hearing or any relief on his claims, the request for appointment of counsel is moot.

about those convictions on direct examination. Of particular interest is Brawer's complaint that the two Canadians, Bubic and Welch, were not called as witnesses. This Court after a long hearing observed five years ago in its decision on remand that the defense's failure to make

use of the Canadians was a calculated decision motivated by the desire to avoid harmful testimony. 367 F.Supp. at 165. For Brawer now to cite this decision as an instance of his lawyer's incompetence is disingenuous at best.

## VI.

Brawer's motion to vacate his sentence and judgment of conviction is accordingly denied.

SO ORDERED.